# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1570V
UNPUBLISHED

| | |
|---|---|
| KATHLEEN BARTHOLOMEW,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: June 5, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Joseph Pepper*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Zoe Wade*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

On October 10, 2018, Kathleen Bartholomew filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccination that was administered on October 3, 2016. Petition at 1-2. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

For the reasons set forth below, and as represented during the May 29, 2020 motions hearing,[3] I find that Petitioner is entitled to an award of damages in the amount **$67,000.00**, **representing compensation for actual pain and suffering.**

### I.     Relevant Procedural History

A year after the case was filed, Respondent filed his Rule 4(c) Report in October 2019 conceding that Ms. Bartholomew was entitled to compensation. Rule 4(c) Report (ECF No. 21) at 4. In view of Respondent's position, a ruling on entitlement was entered finding that Petitioner was entitled to compensation for SIRVA. ECF No. 22. Thereafter, the parties attempted to informally resolve the issue of damages but reached an impasse on an appropriate award. ECF No. 26. I ultimately indicated to the parties that I would resolve their dispute as to damages via a motions hearing, and held that hearing on May 29, 2020.[4]

The parties argued for damages based on briefing completed prior to the motions hearing. Thus, on March 12, 2020, Petitioner filed a damages brief requesting that I award $82,500.00 for past and future pain and suffering. Petitioner's Memorandum in Support of Damages at 12. ECF No. 31. Petitioner states that her course of treatment was difficult and included a cortisone injection, an MRI, and 43 sessions of physical therapy. *Id.* at 9. Further, Petitioner argues that her pain was immediate and intense and that her symptoms interfered with her activities of daily living for eight months. *Id.*

On April 13, 2020, Respondent filed a damages brief proposing a pain and suffering award of no more than $60,000.00. Respondent's Brief on Damages ("Res. Brief") at 1. ECF No. 34. Respondent argues that Petitioner's medical records demonstrate that her SIRVA injury was not severe, required only conservative treatment, and that she has met all treatment goals. Res. Br. at 5.[5]

---

[3] *See* Minute Entry dated May 29, 2020.  The transcript of this hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

[4] Order, issued Mar. 26, 2020 (ECF No. 32) at 1. On April 6, 2020, the parties indicated they could participate in an expedited hearing on May 29, 2020. Joint Status Report, filed April 6, 2020 (ECF No. 33).

[5] Respondent also discusses several pain and suffering decisions arguing that the degree of severity of the injuries in those cases, comparatively speaking, was similar to that of Petitioner's and the awards were approximately $60,000.00.  In addition to discussing prior Vaccine Program Awards, Respondent also asserts that "the Vaccine Program's pain and suffering awards in cases primarily or only involving shoulder injuries are substantially higher than what is typically awarded in the traditional tort system."  Res. Br. at 6.

## II. Legal Standard

I discussed at length the legal standard to be considered in determining an appropriate award of pain and suffering, as well as prior SIRVA compensation in SPU cases in several recent decisions. I fully adopt and hereby incorporate my prior discussion in sections V and VI of the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

## III. Appropriate Compensation for Petitioner's Pain and Suffering

Pain and suffering is the sole component requested for damages herein, so only the legal standards bearing on its calculation are relevant. In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavit filed and all assertions made by the parties in written documents and at the expedited hearing held on May 29, 2020. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the specific circumstances of this case as set forth herein:

- Ms. Bartholomew received the flu vaccine alleged as causal on October 3, 2016. Exhibit 1 at 1. One week later, on October 10, 2016, Petitioner called her primary care provider ("PCP"") to complain about soreness to her left arm following her flu shot. Ex. 7 at 1.

- Petitioner presented to her PCP on November 14, 2016 to follow up on her October 10, 2016 complaint of left arm soreness. Ex. 2 at 2. She rated her pain as an eight on a ten-point scale. *Id.* The PCP noted that Petitioner demonstrated passive range of motion with difficulty. *Id.*

3

- On November 28, 2016, Petitioner presented to an orthopedist for an evaluation of her left shoulder pain. Ex. 3 at 13. The orthopedist noted that Petitioner's pain was persistent and that she had trouble "using it overhead" and sleeping at night. *Id.*

- On December 13, 2016, Petitioner underwent an MRI of her left shoulder. Ex. 2 at 31; Ex. 3. At 44. Petitioner's orthopedist determined that it revealed "some mild tendinosis, no full-thickness rotator cuff tear . . . [and] some mild AC joint arthropathy, no appreciable glenohumeral arthropathy." Ex. 3 at 12.

- Between January 9 and June 6, 2017, Petitioner completed 43 sessions of physical therapy. Ex. 4. The note documenting her initial evaluation indicates that Petitioner experienced significant pain with limited movement in her left shoulder. *Id.* at 110. Petitioner stated that her pain fluctuated from zero to eight on a ten-point pain scale. *Id.*

- Petitioner continued to see her orthopedist for her left shoulder. On January 30, 2017, the orthopedist noted that, "[o]verall, she is better." Ex. 3 at 11. On March 6, 2017, he noted that while Petitioner's condition had improved, "she still gets a sharp pain through the anterolateral aspect of her shoulder." *Id.* at 9. A steroid injection was administered in her left shoulder. *Id.*

- Petitioner underwent a physical therapy re-evaluation on April 5, 2017. Ex. 4 at 52. She "denie[d] pain most of the day with the exception of OH [overhead] reaching, weightbearing into elbow, or forward reaching." *Id.* Petitioner indicated that her pain ranged from four to five on a ten-point scale. *Id.*

- On May 8, 2017, Petitioner presented to her PCP and reported that her shoulder "doesn't hurt all the time" and that the cortisone injection helped. Ex. 2 at 1. Petitioner also presented to her orthopedist on this date. Ex. 3 at 2. The orthopedist confirmed that the cortisone injection had improved her condition, but noted that Petitioner continued to have "diffuse pain on the left side with difficulty raising it overhead. She cannot lie comfortably at night." *Id.*

- Petitioner was discharged from PT on June 6, 2017. Ex. 4 at 1-2. Although she continued to experience pain with overhead lifting, Petitioner had no functional limitations. *Id.* She rated her pain as ranging from one to four on a ten-point scale. *Id.*

- In an affidavit, signed on October 8, 2018, Petitioner states that the range of

4

motion in her left shoulder is "better" and that she is no longer taking medication. Ex. 8 at 4. She further states that "[o]ccasionally, when I rest my arm on my desk for too long, my shoulder becomes stiff and achy. This also happens when I am resting overnight and not actively moving my left shoulder." *Id.*

The case record overall establishes that while Petitioner's pain was severe during the period immediately following vaccination, her level of discomfort varied during the subsequent eight months. Although Petitioner described her shoulder pain as an eight on a ten-point scale during her initial appointment with her PCP on November 14, 2016, by her January 9, 2017 PT evaluation, she described her pain as fluctuating between zero and eight. Less than one month later, on January 30, 2017, Petitioner's orthopedist indicated she was better, overall.

In the month following Petitioner's receipt of a cortisone injection on March 6, 2017, she denied most pain. By June 6, 2017, approximately eight months post-vaccination, Petitioner was found to have no functional limitations and she rated her pain as ranging from one to four on a ten-point scale. Nevertheless, while the level of pain Petitioner experienced was not consistently severe and there was no need for surgical intervention, Petitioner has experienced some lingering problems. Further, her participation in 43 sessions of physical therapy is significant.

The above-described course is similar to the petitioner in *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335, at *10 (Fed. Cl. Spec. Mstr. November 6, 2019)(awarding $65,000.00 for pain and suffering after finding that the claimant's "pain was fairly significant in the first two months post-vaccination, but progressively eased in the ensuing period, with her movement impairment also largely (though not totally) improved within seven months of vaccination"); *see also Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 at *7 (Fed. Cl. Spec. Mstr. May 23, 2018)(awarding $60,000 for pain and suffering following a SIRVA wherein petitioner sought treatment three months post-vaccination, underwent 15 physical therapy sessions, received a steroid injection, and ultimately reported a 94 percent recovery with a pain level at 1.5). I therefore find that a damages award comparable to these two cases is most warranted, although perhaps slightly higher to account for the additional PT sessions and slightly increased severity.

## IV. Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $67,000.00, for her actual pain and suffering in the form of**

**a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[6]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.